WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Herbal Care Systems, Inc., et al.,  ) | No. cv-06-2698-PHX-ROS |
| ) | |
| Plaintiffs,  ) | |
| ) | |
| vs.  ) | **ORDER** |
| ) | |
| James Plaza, et al.,  ) | |
| ) | |
| Defendants.  ) | |
| _____) | |

Pending before the Court are Defendant James Plaza's Motion for Summary Judgment (Doc. 87) and Plaintiffs' Partial Motion for Summary Judgment (Doc. 89). For the reasons stated herein, Defendant's Motion will be granted in part and denied in part, and Plaintiffs' Motion will be denied.

BACKGROUND

Herbal Care Systems, Inc. ("HCS") sold Paraben-Glycol Free ("PG Free"), a product used in personal hygiene products such as deodorants. Body Blue, Inc. was a Canadian company that originally developed the formula for PG Free at the request of HCS. The two companies had an arrangement by which HCS would forward purchase

orders to Body Blue, which would then ship the orders to HCS's customers.[1]  HCS would be paid directly by the customers, and then, in turn, pay Body Blue.

In July of 2004, Plaintiffs William Grundemann and the Oak Leaf Family Trust entered into a Stock Redemption Agreement with HCS and Body Blue.  The agreement was executed by Defendant James Plaza on behalf of HCS and by David Elliott as president of Body Blue.  In that agreement, HCS and Body Blue agreed that, in exchange for purchasing the stock of the Plaintiffs in question, Body Blue would:

> continue to license its PG Free technology to [HCS] and to manufacture all products it currently manufactures and use best efforts to offer to manufacture all new products for [HCS] and its customers for a period of at least 64 months after the Closing Date and on substantially the same terms as Body Blue, Inc. currently provides to [HCS].

The parties also agreed that HCS and its principals would not participate in any business that competes with the business of HCS.

After execution of the Stock Redemption Agreement, Plaza, Plaintiffs allege, coordinated with Body Blue to transfer HCS's purchase orders to a new company owned by Plaza (though none of these negotiations came to fruition).  In 2005, Plaza instructed HCS's customers to pay money directly to Body Blue instead of HCS; Plaza states that those companies had come under new management and preferred to deal with HCS directly.  Either way, HCS was owed royalties from Body Blue pursuant to a Royalty Agreement between the two companies.  Body Blue continued to pay royalties in 2005 but ceased in 2006, strangling HCS's cash flow.  Plaza received a salary from Body Blue throughout this period.

Shortly thereafter, Body Blue entered receivership in Canada.  HCS was not termed a creditor able to recover any money from Body Blue.

Plaintiffs allege that Plaza's actions constituted self-dealing and brought a variety of claims.  On May 21, 2008, the parties stipulated to dismiss with prejudice all counts

---

[1] Plaza states that this happened only sometimes; sometimes purchase orders were routed directly through Body Blue.

- 2 -

1  against Plaza except Count 2 (Breach of Contract) and Count 3 (Breach of Fiduciary
2  Duty).  Plaza  asks for summary judgment on both claims; Plaintiffs ask for summary
3  judgment on the question of Plaza's liability.

## STANDARD OF REVIEW

5  A court must grant summary judgment if the pleadings and supporting documents,
6  viewed in the light most favorable to the non-moving party, "show that there is no
7  genuine issue as to any material fact and that the moving party is entitled to a judgment as
8  a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-
9  23 (1986).  Substantive law determines which facts are material, and "[o]nly disputes over
10 facts that might affect the outcome of the suit under the governing law will properly
11 preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.
12 242, 248 (1986).  In addition, the dispute must be genuine; that is, "the evidence is such
13 that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477
14 U.S. at 248.

15 "[A] party seeking summary judgment always bears the initial responsibility of
16 informing the district court of the basis for its motion, and identifying those portions of
17 the pleadings, depositions, answers to interrogatories, and admissions on file, together
18 with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of
19 material fact."  Celotex, 477 U.S. at 323 (internal quotations and citations omitted).  The
20 party opposing summary judgment "may not rest upon the mere allegations or denials of
21 [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine
22 issue for trial."  Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith
23 Radio Corp., 475 U.S. 574, 586-87 (1986).  There is no issue for trial unless there is
24 sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable,
25 or is not significantly probative, summary judgment may be granted."  Anderson, 477
26 U.S. at 249-50 (citations omitted).  However, "[c]redibility determinations, the weighing
27 of the evidence, and the drawing of legitimate inferences from the facts are jury functions,
28 not those of a judge."  Id. at 255.  Therefore, "[t]he evidence of the non-movant is to be

1 believed, and all justifiable inferences are to be drawn in his favor" at the summary
2 judgment stage. Id.

## CHOICE OF LAW

A federal court sitting in diversity applies the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Orr v. Bank of Am., 285 F.3d 764, 772 n.4 (9th Cir. 2002). Arizona courts apply the rules set forth in the Restatement (Second) of Conflicts (1972) ("Restatement"). Bryant v. Silverman, 703 P.2d 1190, 1191 (Ariz. 1985).

Here, Plaintiffs allege Breach of Fiduciary Duty and Breach of Contract. Section 145(a) of the Restatement states:

> The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . .

Plaintiffs are Arizona citizens, HCS was located there, and the actions of HCS officers that led to the present dispute took place there. Neither party argues that another forum's law is more appropriate. Accordingly, Arizona law shall be applied to Plaintiffs' tort claim.

Section 187 states that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" subject to certain exceptions. The Stock Redemption Agreement, which is the basis for Plaintiffs' contract claim, specifies that Arizona law governs the agreement. There has been no suggestion that Arizona law is inappropriate as per one of the exceptions listed in the Restatement. Arizona law shall be applied to Plaintiffs' contract claim.

## ANALYSIS

### A. Breach of Contract

Defendant Plaza argues that he is not a party to the Stock Redemption Agreements that Plaintiffs allege a breach of. Accordingly, he argues, Plaintiffs' breach of contract claim must be dismissed. In that agreement, HCS and Body Blue, Inc. agreed that HCS and its principals would not participate in any business that competes with the business of HCS. It is axiomatic that non-

- 4 -

1  parties cannot be held liable for breach of contract barring a special showing by Plaintiff that, for
2  instance, the corporate veil has been pierced. See, e.g., Ixe Banco, S.A. v. MBNA America Bank,
3  N.A., No. CV-07-0432, 2008 U.S. Dist. Lexis 19806 at * 36 (S.D.N.Y. Mar. 7, 2008) ("[N]on-
4  parties cannot be liable for a breach of contract under New York law" as "New York law respects
5  corporate separateness unless a plaintiff bears the heavy burden of showing that the corporation was
6  dominated as to the transaction attacked and that such domination was the instrument of fraud or
7  otherwise resulted in wrongful or inequitable consequences.") (internal citations and quotations
8  omitted); Synapsis, L.L.C. v. Evergreen Data Systems, Inc., No. C-05-01524, 2005 U.S. Dist. Lexis
9  42339 at * 9-10 (N.D. Cal. Jul. 13, 2005); Meeker v. Gray, 492 N.E.2d 508, 515 (Ill. 5th Dist. 1986).
10  Plaintiffs have made no such showing, instead arguing merely that Plaza interfered with
11  HCS's contractual obligations. Accordingly, Plaintiffs' breach of contract claim fails.

## B. Breach of Fiduciary Duty

13  Plaza argues that because Plaintiffs Grundemann and Wilhardt (and the associated family
14  trust) were not shareholders of HCS as of July 31, 2004 – after which the actions taken by Plaza that
15  would give rise to liability allegedly occurred – they are owed no fiduciary duty. As such, he
16  argues, they are merely creditors who are owed no duty of this sort unless the corporation was
17  insolvent. Plaintiffs respond first that no precedent provides that "once a shareholder agrees to sell
18  his or her stock back to the company, the fiduciary duty of the officers and directors cease . . .,
19  especially where that company has not even paid the agreed upon purchase price for that stock."
20  Second, Plaintiffs argue that even if Plaintiffs are deemed creditors rather than shareholders, Arizona
21  law provides they are owed a fiduciary duty nonetheless.

22  The law is fairly clear that former shareholders may not maintain a derivative action against
23  a corporation. See, A.R.S. § 10-741; Blasband v. Rales, 971 F.2d 1034. 1041 (3d Cir. 1992).
24  However, Plaintiffs here appear to be bringing a direct action; the law on such actions is less settled.

25  The general trend, however, appears to be towards refusing to recognize actions for breach
26  of fiduciary duty by non-shareholders and the implication of that precedent is that former
27  shareholders are likewise prohibited. The Supreme Court of Delaware has held that no fiduciary
28  duty is owed to debenture holders as "[b]efore a fiduciary duty arises, an existing property right or

1  equitable interest supporting such a duty must exist." Simons v. Cogan, 549 A.2d 300, 304 (Del.
2  1988). Similarly, a California appellate court, in finding bondholders were owed no fiduciary duty,
3  distinguished between bondholders and shareholders in that "bondholders have prior but fixed
4  claims on a firm's assets, while shareholders have limited liability for the firm's debts and unlimited
5  claims on a firm's assets." Pittelman v. Pearce, 8 Cal. Rptr. 2d 359, 364 (2d Ct. App. 1992). Nor
6  do stock options give rise to a fiduciary duty; "[t]he instrument stands alone, claiming no equity in
7  the corporation, entitled to no vote, and with no fiduciary obligation of the management to the option
8  holder's interest." Starkman v. Warner Comm., Inc., 671 F.Supp. 297, 304 (S.D.N.Y. 1987); see
9  also, Glinert v. Wickes Co., No. 10407, 1990 Del. Ch. Lexis 42 at * 9; McLaughlin v. Cendent
10 Corp., 76 F. Supp. 2d 539, 549-50 (D.N.J. 1999).[2]

11 Former shareholders – even ones who have not yet been paid for the stock in question – are
12 not easily distinguishable from the classes of interest holders discussed above. Their fortunes no
13 longer rise and fall with those of the corporation, and they are not relying on the sound management
14 of corporate officers to steady the value of their interest. Instead, they have a 'prior but fixed claim'
15 on the firm's assets. The fact of their recovery may be affected by a corporate manager's actions,
16 but a corporate officer is not managing property for the former shareholder in the shareholder's
17 stead.

18 Similar principles prevent creditors from recovering on a claim for breach of fiduciary duty.
19 There is, however, an exception to this rule. "[*W]hen a firm is insolvent*, creditors are included in
20 the class of persons to whom a board of directors owes a fiduciary duty." Dawson v. Withycombe,
21 163 P.3d 1034, 1058 (Ariz. Ct. App. 2007) (emphasis added). This duty "is derived from the
22 corporate form, which exists for the benefit of the creditors as a class when the firm is insolvent."

---

[2] Conversely, pledgees of stock generally are found to be owed a fiduciary duty. One court compared pledges to shareholders as follows:
> Beneficial and legal holders would seem to be similarly situated. A pledgee holding a security interest in corporate shares is a potential shareholder. He has the same interest and concern as a shareholder that the corporate affairs be managed properly. If the officers default, the pledgee suffers harm generically not unlike that experienced by the shareholder.

Gibson v. Manuel, 534 So. 2d 199, 202 (Miss. 1988).

Id. (citing Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 792 (Del. Ch. 2004); A.R. Teeters & Assoc., Inc. v. Eastman Kodak Co., 836 P.2d 1034, 1041 (Ariz. Ct. App. 1992)).

Here, there is no suggestion that HCS was insolvent at the time in question. Plaza notes that it is undisputed that HCS reported a gross profit in 2004 and continued to make payments under the stock redemption agreements through the early part of 2006. Because the fiduciary duty of insolvent firms to creditors arises with insolvency itself – i.e., at the point at which the entity exists for the purpose of discharging, to the fullest extent possible, its debts to creditors – corporate officers cannot be held liable under a breach of fiduciary duty theory for acts performed prior to the firm's insolvency. Accordingly, summary judgment must be granted to Plaza as to Wilhardt, Coghlin, Grundemann, and Oak Leaf Trust's Count Three.

## C. Limitation of Liability

Plaza argues that Plaintiffs' claims are barred by the limitation of liability provision in HCS's Articles of Incorporation. That provision states:

> To the fullest extent permitted by the Arizona Revised Statutes, as the same exists or may hereafter by amended, a director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for any action taken or failure to take any action as a director. No repeal, amendment or modification of this article whether direct or indirect, shall eliminate or reduce its effect with respect to any act or omission of a director of the Corporation occurring prior to such repeal, amendment or modification.

Arizona law allows for such provisions to be present in the articles incorporation, but includes exceptions for, among other things, financial benefit received by a director to which the director is not entitled and intentional infliction of harm on the corporation or the shareholders. A.R.S. § 10-202(B)(1). Plaintiffs argue that those exceptions exclude Plaza's acts from inclusion under the statute; Plaza replies that he did not receive a financial benefit to which he was not entitled or intentionally inflict harm on the corporation or its shareholders.

This provision has never been interpreted by Arizona courts or federal courts sitting under Arizona law. However, this Court believes it is clear that the exceptions apply to the actions alleged against Plaza. As to the first, Plaintiffs allege that Plaza allowed HCS' cash flow to be diverted to Body Blue, Inc., "a company which would grant Plaza stock and pay Plaza a six-figure salary." As to the second, as Plaintiffs' Breach of Contract claim fails, Plaintiffs allege Breach of Fiduciary Duty

- 7 -

through breach of the duty of loyalty. This constitutes an intentional tort. Accordingly, Plaintiffs' remaining claim is not barred by the release of liability provision.

### D. Prior Decision of the Ontario Superior Court of Justice

Plaza argues that a decision of the Ontario Superior Court of Justice issued a decision on this matter in which it "made no finding or reference to Mr. Plaza or any action taken by Mr. Plaza" and decided that "HCS lost whatever rights it had to PG Free technology because of Body Blue's bankruptcy." This Court, he argues, should grant comity to those findings of fact and conclude that Plaintiff did not suffer any damages as a result of Plaza entering into a royalty agreement or moving purchase orders to Body Blue.

While this Court does indeed respect the comity due the Ontario Superior Court of Justice, that opinion focuses on the rights and liabilities of HCS and Body Blue relating to PG Free. It was not attempting to determine the rights and liabilities of Plaza vis-á-vis the shareholder plaintiffs here, nor did the Ontario court make factual findings concerning those issues.

### E. Punitive Damages

Plaza argues that Plaintiffs have not provided the requisite "clear and convincing" evidence support a claim for punitive damages.

Punitive damages require a demonstration that the defendant had an "evil mind" and demonstrated "aggravated and outrageous conduct." Linthicium v. Nationwide Life Ins. Co., 723 P.2d 675, 680 (Ariz. 1986). Plaintiff may meet this burden through "indirect and circumstantial evidence;" courts recognize that direct evidence (i.e., a statement from the defendant) of an "evil mind" is rare. Thompson v. Better-Bilt Aluminum Prods. Co., 832 P.2d 203, 210 (Ariz. 1992). In a commercial tort context, punitive damages are harder to obtain. The Supreme Court has found that punitive damages are more likely to be appropriate where:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.

BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1995).

Here, Plaintiffs have provided some evidence tending to support the theory that Plaza deliberately drew money away from HCS and directed it to Body Blue for his own material benefit. However, of the factors elucidated in Gore, Plaintiffs have only began to make a showing that the harm was the result of intentional malice, trickery, or deceit.[3] At least one court considering the issue has found that the fact that the defendant acted maliciously was not alone enough to find the defendant's "behavior was sufficiently reprehensible for an award of punitive damages." Chi. Title Ins. Corp. v. Magnuson, 487 F.3d 985, 1000 (6th Cir. 2007). Accordingly, summary judgment must be granted to Plaza on this point.

### F. Plaza's Liability

Plaintiffs ask for a finding that Plaza violated his duties as a corporate fiduciary as a matter of law when he executed a Royalty Agreement that "allowed HCS's only source of cash flow from its customers to be diverted to Body Blue, Inc.." Plaintiffs have failed to show that there is no genuine issue of material fact regarding Plaza's liability, and their motion for summary judgment cannot be granted.

The business judgment rule "precludes judicial inquiry into actions taken by a director in good faith and in the exercise of honest judgment in the legitimate and lawful furtherance of a corporate purpose." Albers v. Edelson Tech. Partners L.P., 31 P.3d 821, 828 (Ariz. Ct. App. 2001). Where "there is a prima facie showing that a director is personally interested in a corporate transaction, the business judgment rule does not apply, and the burden shifts to the director to show that the decision with respect to a particular transaction is fair and serves the best interest of the corporation." Shoen v. Shoen, 804 P.2d 787, 794 (Ariz. Ct. App. 1990). Where "officers and directors engage in transactions outside the ordinary scope of the corporate business they are responsible for losses occurring as a result of their unauthorized use." Kadish v. Phx.-Scotts. Sports Co., 466 P.2d 794, 797 (Ariz. Ct. App. 1970). "This is especially true where the acts of an officer or director smack of self-dealing." Id.

---

[3] Plaintiffs do make a conclusory statement that they are financially vulnerable but fail to make any further showing on this point.

Here, it is undisputed that Plaza served on the board of directors of both companies and was an employee and shareholder of both companies. As he made inquiries to starting a new company altogether and as he continued to receive a salary from Body Blue at the point at which it entered insolvency, cutting off HCS's revenues, there is some evidence of self-dealing. This, the Court believes, is sufficient to allow judicial inquiry into Plaza's business actions. However, Plaintiffs have certainly not overcome any genuine issues of material fact as to whether Plaza's actions violated his duty of loyalty to HCS and its shareholders. Plaza has provided evidence that HCS made *more* under the Royalty Agreement than it did under its original arrangement, as well as that the customers themselves prompted the switch, something that might demonstrate Plaza's actions were sound business ones. He has also presented evidence that he did not benefit financially from the arrangements put in place. Whether Plaza breached his fiduciary duty is a question for the trier of fact.

Accordingly,

**IT IS ORDERED** Plaza's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiffs' Count 2 (Breach of Contract) is **DISMISSED** with prejudice as to James and Joyce Plaza.

**IT IS FURTHER ORDERED** Plaintiffs Wilhardt, Coghlin, Grundemann, and Oak Leaf Trust's Count 3 (Breach of Fiduciary Duty) is **DISMISSED** with prejudice as to James and Joyce Plaza.

**IT IS FURTHER ORDERED** all Motions in Limine are due 30 days from the date of this Order. Responses are due ten days afterward.

**IT IS FURTHER ORDERED** the parties shall submit a Joint Statement of the Case, of no more than two short paragraphs for the Court's review no later than **May 15, 2009.**.

**IT IS FURTHER ORDERED** the parties shall submit proposed Jury Instructions in compliance with the procedures available on the Court's website, including but not limited to: a *joint*

1  set of proposed jury instructions where the parties' instructions agree, a separate set of instructions 2 (one for each party) where the parties do not agree, and legal authority supporting all proposed 3 instructions whether the parties agree or not no later than **May 15, 2009.**

4  **IT IS FURTHER ORDERED** the Joint Proposed Pretrial Order is due **May 15, 2009**.

5  **IT IS FURTHER ORDERED** the parties are to file the proposed trial schedule no later than 6 **May 15, 2009.**

7  **IT IS FURTHER ORDERED** the parties provide the Court with excerpts of the deposition 8 testimony they propose to present at trial, in compliance with the procedures available on the Court's 9 website, including but not limited to: Plaintiffs highlighting in yellow the portions they wish to offer 10 and Defendants highlighting in blue those portions they wish to offer.  If either party objects to the 11 proposed testimony, an explanation of the objections is to be set forth independently and appended 12 to the depositions no later than **May 15, 2009.**

13  **IT IS FURTHER ORDERED** the parties shall review the Court's standard Juror 14 Questionnaire (available on the Court's website) and submit **NO MORE THAN 5 PROPOSED** 15 **QUESTIONS EACH** (or 10 jointly) to be added to the standard Juror Questionnaire with the 16 Court's approval no later than **July 6, 2009**.

17  **IT IS FURTHER ORDERED** the parties shall submit a second Joint Statement of the Case, 18 of no more than a few short sentences for the Juror Questionnaire no later than **July 6, 2009.**

19  **IT IS FURTHER ORDERED** a final pretrial conference is set for **August 7, 2009 at 1:30** 20 **P.M.**

21  **IT IS FURTHER ORDERED** a status conference is set to review Juror Questionnaires on 22 **August 10, 2009 at 1:30 P.M.**

23  **IT IS FURTHER ORDERED** Trial is set for **August 11, 2009 at 8:30 A.M.**

25  DATED this 17th day of March, 2009.

Roslyn O. Silver
United States District Judge

- 11 -